UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Maxim Defense Industries, LLC,                     Civ. No. 19-1225 (PAM/LIB)

           Plaintiff,

v.                                               **MEMORANDUM AND ORDER**

Jake Kunsky, and
Unconventional Equipment
Solutions, LLC,

           Defendants.

This matter is before the Court on Plaintiff's Motion for a Temporary Restraining Order. Because Defendants had notice of the Motion and an opportunity to respond, the Court will consider the Motion as one for a Preliminary Injunction under Rule 65(a). For the following reasons, the Motion is denied.

**BACKGROUND**

Plaintiff Maxim Defense Industries, LLC, is a Minnesota-based developer and manufacturer of firearms and firearm accessories. Defendant Jake Kunsky and his company, Defendant Unconventional Equipment Solutions, LLC ("UES"), provide consulting services for companies and governments in the development of firearms and accessories. Kunsky is an Army veteran who served in Iraq; he lives in Idaho and UES is an Idaho LLC.

In 2017, Maxim hired UES to provide consulting services. Maxim provided UES with a Consulting Agreement (Compl. (Docket No. 1-1) Ex. A.), which Kunsky signed on UES's behalf. Kunsky is the owner and sole member of UES. This Agreement contains

several provisions relevant to Maxim's requested injunctive relief. First, UES agreed not to "use [Maxim's] Confidential Information for any purpose whatsoever other than the performance of the Services or disclose the Confidential Information to any third party." (Compl. Ex. A. § 3.3.3.) UES also agreed to "deliver to [Maxim] all of [Maxim's] property or Confidential Information in tangible form that [UES] may have in its possession or control" when the Agreement terminated or expired. (Id. § 3.3.4.) The Agreement also contained non-competition and non-solicitation provisions, requiring UES not to compete with Maxim or solicit Maxim's customers or employees for one year after the Agreement's termination. (Id. §§ 5.3.5, 5.3.6.) Finally, the Agreement provided that a violation of either the confidentiality or the non-competition/non-solicitation provisions "would cause immediate and irreparable harm to [Maxim] for which money damages would be inadequate" and therefore Maxim "will be entitled to injunctive relief for [UES's] breach of any of its obligations under [these provisions] without proof of actual damages and without the posting of bond or other security." (Id. § 10.)

The Agreement also contemplated that Kunsky would become a Maxim employee after a year. (Id. §1.1.3(C).) In that section, Maxim agreed to hire Kunsky "as an executive of Research & Development" and represented that the parties would enter into a new employment contract before the start date of that position. (Id.)

The copy of the Agreement appended to Maxim's Complaint contains only Kunsky's signature; the signature line for Maxim is blank. Moreover, the confidentiality provisions allow UES to "retain one copy of the Confidential Information in its legal files." (Id. § 3.3.4.) The Agreement expired on November 1, 2018 (id. § 11), although it also

2

contains a "survival" provision: "The representations, warranties, indemnities and other obligations which by their nature or context are intended to survive payment and/or termination of this Agreement shall survive." (Id. §14.)

In May 2018, Kunsky became an employee of Maxim. The parties did not enter into any employment contract to govern their new relationship. Kunsky claims that Michael Windfeldt, Maxim's owner, repeatedly promised Kunsky an equity stake in Maxim, but that equity stake never materialized. After Maxim suspended Kunsky in late January 2019, it asked him to sign a new consulting agreement with a new non-competition agreement. Kunsky claims that when he refused, Maxim fired him, and then tried to get him to sign a separation agreement that assigned all of Kunsky's work to Maxim, and contained more non-compete and non-solicitation provisions. He did not sign those agreements. Maxim insinuates that Kunsky created a hostile work environment for its other employees, and that it was forced to terminate his employment.

Maxim demanded that Kunsky return his iPhone and computer. According to Maxim, Kunsky initially refused to return these devices to Maxim, but has now done so. However, Maxim asserts that all of the data on the devices was deleted, and a forensic analysis shows that various storage devices were connected to the computer after Kunsky was fired. Maxim also provided Kunsky with an Apple Time Capsule; Kunsky has not returned that device to Maxim but claims that he has given it to his attorneys for safekeeping.

Maxim seeks an injunction requiring Kunsky to comply with the restrictive covenants in the Consulting Agreement, as well as to return the Apple Time Capsule and

provide Maxim with all of the storage devices that were connected to the devices discussed above.

**DISCUSSION**

Maxim initially argues that an injunction is appropriate because of the parties' relationship. According to Maxim, an injunction will merely maintain the status quo and will be coextensive with the terms of the parties' contract. But as discussed both above and below, there are questions about whether there is a valid contract between the parties, and if there is, what the terms of that contract are. And injunctive relief is not appropriate merely because of the parties' pre-existing contractual relationship. E.g., Wave Form Sys., Inc. v. AMS Sales Corp., 73 F. Supp. 3d 1052, 1063 (D. Minn. 2014) (Montgomery, J.) (denying preliminary injunction despite movant's argument that preserving the parties' contractual relationship would preserve the status quo and be in the public interest). While the parties' contractual relationship may be a consideration in evaluating the balance of harms or where the public interest lies, it is not itself an independent reason to grant or deny injunctive relief.

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). When deciding whether to issue an injunction, courts consider four factors: (1) the threat of irreparable harm to the movant; (2) the balance of harm the injunction would have on the movant and the opposing party; (3) the probability that movant will succeed on the merits; and (4) the public interest. Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981). While no factor is dispositive,

"the absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied." Barrett v. Claycomb, 705 F.3d 315, 320 (8th Cir. 2013).

A.  **Likelihood of Success on the Merits**

To demonstrate a likelihood of success on the merits, Maxim must establish that it has a "fair chance of prevailing" on those claims. Planned Parenthood of Minn., N. Dak., S. Dak. v. Rounds, 530 F.3d 724, 732 (8th Cir. 2008) (en banc). This standard does not require "the party seeking relief [to] show 'a greater than fifty percent likelihood that [it] will prevail on the merits.'" Id. at 731 (quoting Dataphase, 640 F.2d at 113). And if the other three factors "strongly favor[] the moving party," then "a preliminary injunction may issue if movant has raised questions so serious and difficult as to call for more deliberate investigation." Dataphase, 640 F.2d at 113.

Maxim's claims against Defendants sound in breach of contract, conversion, and breach of the duty of loyalty.

Maxim has not established a breach of contract claim for purposes of this Motion. The purported contract expired in November 2018, and there is no evidence that Maxim ever signed the Consulting Agreement. While Maxim argues that the parties acted as if they had a contract, breach of an implied contract is a different claim than Maxim raises in its Complaint. Moreover, there are multiple questions of fact as to what the terms of such an implied contract would be. Maxim cannot show a likelihood of success on its claim for breach of contract.

5

Maxim contends that the "survival" clause in the Consulting Agreement means that the restrictive covenants survive the Agreement's termination and thus that its breach claim is likely to succeed. But Maxim has no legal authority for this proposition. And even if the survival clause means that the restrictive covenants bind UES for one year from November 2018,[1] there is no evidence that Kunsky or UES has violated those restrictive covenants, or even that they imminently plan to do so. Moreover, the Agreement specifically allows UES to keep a copy of all confidential information. In the absence of any evidence that Kunsky or UES has actually used or threatened to use Maxim's protected information, Maxim is not likely to succeed on the merits of its contract claim.

Maxim argues that Kunsky is violating the Consulting Agreement by retaining, copying, and destroying Maxim's data. But the Consulting Agreement prohibits the "use" or "disclos[ure]" of Maxim's confidential information, and as noted it specifically allows UES to retain that information. There is no prohibition on copying the data, or even destroying it. Again, Maxim's claims are that there is potential disclosure, not threatened disclosure. The citations Maxim offers in support of its arguments involve a former employee already working for a competitor, and are thus not on point.

---

[1] In its reply brief, Maxim contends that the confidentiality and non-disclosure provisions in the Consulting Agreement "have no duration and survive the termination of the contract." (Def.'s Reply Mem. (Docket No. 16) at 6.) But a restrictive covenant without any temporal limitation is usually considered overbroad and unenforceable. See Vital Images, Inc. v. Martel, No. 07cv4195, 2007 WL 3095378, at *3 (D. Minn. Oct. 19, 2007) (Frank, J.) ("In determining whether a restrictive covenant is reasonable, Minnesota courts have looked to see whether the covenant was bound by temporal or territorial limitations.").

Nor can Maxim show a likelihood of success on the merits of its breach of loyalty claim. An employee's duty of loyalty to his employer ends when the employment relationship ends. Rehab. Specialists, Inc. v. Koering, 404 N.W.2d 301, 304 (Minn. Ct. App. 1987) (noting that duty of loyalty means that an employee may not compete with his employer "while still employed"). Maxim fired Kunsky, and he has no continuing duty of loyalty to Maxim that would support injunctive relief.

Maxim contends that its conversion claim will succeed because Kunsky initially refused to return the iPhone and computer. A claim for conversion requires Maxim to show that it holds a property interest and that Defendants deprived Maxim of that property interest. Staffing Specifix, Inc. v. TempWorks Mgmt. Servs., Inc., 896 N.W.2d 115, 125 (Minn. Ct. App. 2017). Kunsky has now returned both devices, and thus Maxim has no claim for conversion as to those. Maxim also contends that Kunsky has not returned the Apple Time Capsule nor has he given Maxim the storage devices that were attached to his computer after he was fired. Those storage devices, however, are not Maxim's property, and there can be no claim for conversion as to those devices. Maxim might have a conversion claim as to the Apple Time Capsule, because Kunsky has not returned that to Maxim. Given that Kunsky has given up possession of that device for safekeeping and will presumably allow Maxim access to it during discovery, however, Maxim is not entitled to any injunctive relief related to the alleged conversion of the Time Capsule.

To the extent that Maxim argues that Kunsky "converted" Maxim's confidential information and data, Minnesota law does not support such a claim. "Under well-established Minnesota law, [Maxim] may not maintain a conversion claim based on

7

[Defendants'] alleged misappropriate of its intangible property interests." Jacobs v. Gradient Ins. Brokerage, Inc., No. 15cv3820, 2016 WL 1180182, at *3 (D. Minn. Mar. 25, 2016) (Doty, J.); see also Bloom v. Hennepin Cty., 783 F. Supp. 418, 440-41 (D. Minn. 1992) (MacLaughlin, J.) (finding that the Minnesota tort of conversion does not extend to protecting confidential and proprietary information). And Defendants insist that Maxim stores all of its information on the cloud, so that any information Kunsky might have removed from his devices is still readily available to Maxim. Thus, Maxim has not been "deprived of the use of its information" as required for a claim of conversion. Jacobs, 2016 WL 1181082, at *3; see also Bloom, 783 F. Supp. at 441 (finding that defendants' copying and use of plaintiff's proprietary information did not establish deprivation required for a conversion claim). Maxim has not established a likelihood of success on its conversion claim.

Maxim has not demonstrated a likelihood of success on its claims. A preliminary injunction is therefore not appropriate.

**B.      Irreparable Harm**

Maxim contends that it faces a threat of irreparable harm because Kunsky has breached the Agreement's restrictive covenants and also from "the established misuse of its confidential information." (Pl.'s Supp. Mem. (Docket No. 7) at 15.) But there is no "established misuse" of any information here. At best, this case involves a former employee who may have copied some confidential information, something the parties' alleged contract allows him to do. There is no indication that he has used that information in any way or even that he has threatened to do so.

Moreover, in the absence of more specific allegations regarding what Maxim considers its confidential information that is worthy of protection via injunctive relief, Maxim cannot meet its burden to establish irreparable harm. Maxim contends that Kunsky has destroyed confidential information, but as noted, Kunsky asserts that all of Maxim's confidential information is stored on the cloud and is still accessible to Maxim. Again, the cases Maxim cites involving former employees who have actually used their employer's confidential information or have accepted new employment in which such use is virtually certain are not pertinent to the situation.

Maxim has not established that it will suffer irreparable harm in the absence of a preliminary injunction, and the Motion may be denied on that basis alone.

**C.  Balance of Equities and Public Interest**

Given Maxim's failure to establish irreparable harm, and that there are questions as to whether Kunsky is bound by the terms of the Consulting Agreement and whether that Agreement prohibits what he is alleged to have done here, the balance of harms does not weigh in favor of the issuance of an injunction. Nor does the public interest require granting an injunction in this situation, where the parties' rights and obligations are unclear.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that** Plaintiff's Motion for a Temporary Restraining Order (Docket No. 5) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  May 23, 2019                                                    *s/ Paul A. Magnuson*
                                                                                            Paul A. Magnuson
                                                                                            United States District Court Judge